## In re TAMARACK TRAIL COMPANY f/d/b/a Bruce Diem & Doug Gilmore, Debtors.

### Bankruptcy No. 1–81–00526.

United States Bankruptcy Court, S.D. Ohio, W.D.

April 19, 1983.

Paul Nemann, David H. Todd, Cincinnati, Ohio, for Kilday.

## DECISION AND ORDER

BURTON PERLMAN, Bankruptcy Judge.

In our earlier Decision and Judgment in this case, both entered December 10, 1982, we dealt with applications for attorneys fees as administrative expenses in this Chapter 11 case. Applications for back wages by Diem and Gilmore, as well as an application for fee by appraiser Herking were reserved for further proceedings. These latter matters, at least as far as the back wage claims are concerned, were the subject of an evidentiary hearing at which the debtor as constituted by the confirmed plan opposed the several applications. Claimants Diem and Gilmore appeared at the hearing pro se. We reserved decision at the conclusion of the hearing.

The corporate debtor in this case began business in August 1978 and had for its purpose the development and building of a condominium project. Claimants Diem and Gilmore were the principals in the corporate debtor. A tract of land was acquired, and the development of the tract proceeded prior to the filing of the present case. Some buildings were completed while others were in an incomplete state. Rents were derived from the completed buildings. Prior to confirmation of the plan in this case, the stock in the corporate debtor was owned fifty percent each by Diem and Gilmore. The basis for the claims of Diem and Gilmore was stated by them to be a duly authorized corporate action fixing their salary as corporate officers at $2,000.00 per month. Their testimony was that this began April 1, 1979, the date of incorporation. Diem's testimony was that while authorized, neither he nor Mr. Gilmore ever took such salary. Notwithstanding this testimony, however, Diem did say that both he and Mr. Gilmore did "draw" funds from the corporation. We understood the testimony of Diem to mean that he felt that he had the right to take funds from the corporation other than by way of salary, presumably by way of return of equity in the corporation to the stockholders. Diem testified with respect to a Report of Operations filed with the court for the period of July 1, 1981 through January 1, 1982, that the amount of $9,888.60 was distributed to himself and to Gilmore as "draw". Additionally, Diem and Gilmore for the period February 1, 1982 to May 1, 1982 each took a "draw" of $3,112.00.

A real problem in connection with resolution of the present claims is the fact that because of acts of vandalism which were troublesome to Diem and Gilmore during the time that they were in possession of the property, they were unable to support their case with corporate books and records, for these had been left a shambles by the vandals. Thus, it is not known with any precision how much "draw" was taken by Diem and Gilmore.

Beside questioning the adequacy of the showing by Diem and Gilmore of their entitlement in the first instance to back wages, the reorganized corporation opposes their claims on the ground that they failed to account for and turn over to the reorganized corporation security deposits on account of rent paid in by residents and amounting to some $4,000.00, and also because Diem and Gilmore collected and kept the rents for May 1982 amounting to some $3,000.00 notwithstanding confirmation of the Kilday plan by this court on May 3, 1982. Diem and Gilmore contest this last position on the ground that they were entitled to remain in possession and collect the rent until the dismissal on August 30, 1982 of their appeal from our order of confirmation. There is no denial that the May rents were collected and retained by Diem and Gilmore.

Kilday testified on behalf of the reorganized debtor. He testified that the only records of the debtor which he was able to find from what was turned over to him consisted of cancelled checks drawn upon a checking account at the First National Bank for the period approximately April 1979 to September 1980. During this period Diem and Gilmore had control of the corporation. Included were checks made out to cash with no reason stated totalling some $3,850.00. Diem and Gilmore were able to offer no explanation for the purpose of these checks at the hearing. Additionally, there were checks which suggested that the account was used for purposes other than strictly corporate, for example, the payment of a traffic ticket; dues for the YMCA; a check to Krogers.

■ After a careful review of the evidence we have concluded that the objection to the back wage claims must be sustained. By statutory definition, Diem and Gilmore were "insiders". 11 U.S.C. § 101(25)(B). As to a claim for services of an insider the statute enjoins us not to allow such claims which exceed the reasonable value of any services. 11 U.S.C. § 502(b)(5). We conceive the significance of this statutory provision for present purposes to be that it creates a burden which a claimant must bear in order to succeed in his claim. The burden which must be borne is that claimant prove that the claim asserted is reasonable value for services rendered. Clearly, where such an affirmative burden is created by statute mere reliance upon a corporate resolution fixing a rate of compensation will not suffice to sustain that burden. There was testimony at the hearing that Diem and Gilmore performed maintenance duties at the premises, and, of course, they did make efforts to secure financing in support of the plan which they proposed which was not confirmed. Such services do not justify the compensation set out in the corporate resolution. Moreover, we are unwilling to recognize the distinction between salary and "draw" asserted by Diem and Gilmore. They have admitted that they did "draw" funds from the corporation in some unspecified amount. The other side of this admission is that, in the absence of adequate records, claimants are in no position to prove what amount was not paid to them, and this is of the essence in the present proceeding. Being unable to prove that fact, they cannot carry their burden of proof. Additionally, we must sustain the objection to the wage claims, recognizing that as filed they were limited to $2,000.00 for each of Diem and Gilmore, because the set-offs asserted by the reorganized debtor are valid. That is, Diem and Gilmore occupied a fiduciary relationship to the corporation while they were in control of it. As fiduciaries, they had the responsibility of maintaining trust funds derived from security deposits by lessees and these should have been turned over following confirmation in this court. Further, they were not entitled to retain the May rents which were collected after confirmation of the Kilday plan by this court.

■ We turn finally to the claim asserted for compensation for Herking as an appraiser. We note that the record shows no claim or application filed by Herking himself, but rather this claim arises on a filing by Diem and Gilmore (Doc. # 89). It is the position of Diem and Gilmore that the serv-

ices of Herking were secured by them as an expert appraiser to testify on behalf of the corporate debtor as originally constituted. The fact that this arises on a filing by Diem and Gilmore makes ambiguous whether what is being sought is compensation for Herking, or whether it is reimbursement to Diem and Gilmore who have already paid Herking. In any case, the reorganized debtor in opposition to an allowance of compensation to Herking contends that Herking was not retained on behalf of the corporation, but rather on behalf of the individuals, Diem and Gilmore. We have concluded that the record is inadequate for us to make an award to Herking. The record as it stands is susceptible of the interpretation that Herking has been paid by Diem and Gilmore. If this is true, it constitutes an admission by Diem and Gilmore that the services were rendered on their behalf rather than that of the corporation, because they paid for such services. We can see no basis for ordering a reimbursement of Diem and Gilmore for such an expenditure.

The question regarding compensation for Herking is not without difficulty. As an abstract proposition, it is beneficial from the point of view of rehabilitating enterprises that a troubled debtor be in a position to secure the services of requisite experts. On the other hand, however, it is counter-productive from a rehabilitative aspect to impose upon a debtor attempting to work its way out of financial difficulties to impose upon it expenses which are not of its making. How we would resolve this tension in another case we cannot say, but under the circumstances depicted above, we have no alternative but to deny the application.

SO ORDERED.